UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                          Case No. 16-cr-20460

v.

                                          HON. MARK A. GOLDSMITH

D2 – CARLO WILSON,

                                          FILED UNDER SEAL

        Defendant.

_____/

**OPINION & ORDER**
**GRANTING EX PARTE MOTION FOR SUBSTITUTION OF COUNSEL (Dkt. 214)**

This matter is before the Court on learned counsel Jacqueline Walsh's ex parte motion for the substitution of appointed counsel Marc Lakin (Dkt. 214).[1]  The issues have been fully briefed, and a non-public hearing was held on July 25, 2017.[2]  For the reasons stated below, the Court grants the motion.

**I.  BACKGROUND**

Defendant Carlo Wilson, an alleged member of the 6 Mile Chedda Grove street gang, has been charged in this capital case with one count of racketeering conspiracy; two counts of murder in aid of racketeering; two counts of assault with a dangerous weapon in aid of racketeering; two counts of using and carrying a firearm during, and in relation to, a crime of

---

[1] See E.D. Mich. LCrR 12.2 ("Ex parte motions permitted pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), shall be filed with the District Court or Magistrate Judge assigned to the case rather than in the Clerk's Office and shall be filed under seal.").

[2] The hearing was closed to the public, as well as the Government, because of the likely discussion of matters protected by the attorney-client privilege and attorney work-product doctrine.  Defendant consented to this on the record, asking only that his mother be allowed to stay in the courtroom, to which the Court agreed.  Any transcript of the hearing shall also be sealed.

violence causing death; and one count of using, carrying, and discharging a firearm during, and in relation to, a crime of violence. See generally Superseding Indictment (Dkt. 39).

Wilson was first indicted on June 22, 2016 (Dkt. 1). Lakin, who had previously represented Wilson in state-court matters, was retained and filed an appearance on behalf of Wilson on June 29, 2016 (Dkt. 12). Because some of the crimes charged against Wilson are punishable by death, the Court appointed Walsh as learned counsel for Wilson, pursuant to 18 U.S.C. § 3005. See 7/28/2016 Order (Dkt. 29).

Wilson soon became unable to pay for Lakin's services, and Lakin filed an ex parte motion seeking to have himself appointed at public expense (Dkt. 35). The Court granted the motion. See 10/21/2016 Order (Dkt. 36). In addition to appointing Lakin counsel, the Court also ordered "Lakin to provide the Court with the number of hours he ha[d] worked on this case and how much he ha[d] been paid for his services." Id. at 1. The purpose of the submission was for the Court to "calculate the hours worked as if they had been worked at the rate provided by the Criminal Justice Act ('CJA'), 18 U.S.C. § 3006A." Id. Lakin's submission was due by October 31, 2016. Id. at 2. It has never been submitted.

## II. DISCUSSION

Walsh has filed the present motion seeking to have Lakin removed and substituted with an attorney from the CJA panel of attorneys. Walsh contends that Lakin's actions in this case demonstrate that he is not qualified, and that the removal and substitution are necessary to protect Wilson's constitutional right to the effective assistance of counsel.[3]

---

[3] Walsh also argues that removal and substitution are required due to an apparent potential conflict of interest of Lakin. See Walsh Br. at 2-3. Because Walsh's motion is granted on other grounds, the Court will not address this additional argument.

The Sixth Amendment entitles criminal defendants to the "effective assistance of counsel," and is meant "to ensure that criminal defendants receive a fair trial." Strickland v. Washington, 466 U.S. 668, 686-689 (1984). Indigent defendants facing federal capital charges are also are entitled to two attorneys, at least one of whom must "be learned in the law applicable to capital cases." 18 U.S.C. § 3005.

Motions for the substitution of appointed counsel in capital cases must be decided "in the interests of justice." Martel v. Clair, 565 U.S. 648, 658-660 (2012). Although a court's substitution decision will inevitably be "fact-specific," certain factors to consider include the reason for substitution and its cause, as well as the timeliness of the motion. See id. at 663-664; see also Christeson v. Roper, 135 S. Ct. 891, 894 (2015) (per curiam).

First, Walsh's motion was timely filed. This case is still in its infancy, and much of Lakin's conduct addressed in the motion has been occurring on a regular basis over the past several months. A meeting has been scheduled for September 25, 2017, between Wilson's legal team and the Capital Review Committee of the Department of Justice. Removal of Lakin at this time would not prejudice Wilson's mitigation efforts or the upcoming meeting with the Government at the end of September.

Second, the reason and cause for the motion weigh decidedly in favor of substitution. In her briefing, Walsh contends that "Lakin's words and inaction during the course of his representation of Mr. Wilson do not support that he is well qualified to represent Mr. Wilson in this highly specialized and demanding type of litigation." Walsh Br. at 4 (Dkt. 214-1). According to Walsh, Lakin "has not contributed to the necessary work that must be done," and his "conduct impedes the progress of [Wilson's legal] team." Id. at 5. Lakin's behavior, says

Walsh, has led to "the breakdown of the relationship between Mr. Lakin and the rest of the defense team." Walsh Reply at 2 (Dkt. 218).

In support of her complaints about Lakin's conduct, Walsh provided three declarations — one from Mary Pisula-Stewart (fact investigator), another from Felicia Sullivan (mitigation specialist), and the last from Judy Clarke (member of the Federal Death Penalty Resource Counsel Project). These declarations recount Lakin's level of participation in this case. Lakin has been repeatedly absent from telephone conferences, during which defense work and strategy were discussed. Sullivan Decl. ¶ 5. For an in-person meeting in Detroit, the purpose of which was to discuss the team's work, Lakin — who is based in the Detroit area — chose to appear telephonically at the last minute. Id.; Stewart Decl. ¶ 7. Lakin also "declined to attend a capital case consultation conference which all other team members attended." Stewart Decl. ¶ 7. According to Sullivan, when Lakin does participate, "he dominates the conversation, and often makes little sense." Sullivan Decl. ¶ 5.

Regarding his unwillingness to work cooperatively with others, the declarations state that Lakin has refused to tell other team members what he discussed with Wilson and with Wilson's mother. Id.; Stewart Decl. ¶ 7; Clarke Decl. ¶ 4 ("Lakin is not functioning as a member of a defense team" because "he does not share with the rest of the team any of his work product, and does not share the content of his communications with the defendant or the defendant's family."). Lakin has also refused to share his theory of defense with the rest of the team. Stewart Decl. ¶ 7; Sullivan Decl. ¶ 5.

Based on Lakin's conduct, the team members have found it difficult to build a trusting relationship with Wilson. Stewart Decl. ¶ 7; Sullivan Decl. ¶ 5 ("This lack of communication has been damaging in the establishment of rapport with the client and his family and a hindrance

to the progress of both the mitigation and fact investigation."); Clarke Decl. ¶ 4 (Lakin's "behavior is destructive of the trusting relationship between a client and his defense team, and between member of a capital defense team, . . . [which] is essential for effective and efficient representation and successful resolution of these very challenging cases."). This difficulty has been further compounded by Lakin apparently providing conflicting information to Wilson and the defense team, which has caused "Wilson to be wary and uncertain about decisions being made in his case." Stewart Decl. ¶ 7.

Sullivan believes that Lakin's conduct has been "reckless, destructive, and an impediment to [her] mitigation investigation." Sullivan Decl. ¶ 5. Stewart has similarly found that "Lakin's conduct has impaired the progress of the work of the team and delayed the investigation and preparation of this case." Stewart Decl. ¶ 8. Stewart believes that there has been a breakdown of trust with Lakin, which cannot be repaired. Id. ¶ 9.

In addition to these declarations, Walsh recalls an instance where Lakin accepted a legal research assignment on May 11, 2017, and stated that he would complete the assignment by May 23. Walsh Reply at 8. Despite efforts to follow-up with Lakin on the progress of the research, Walsh states that no work on this assignment has ever been shared with her or the team. Id. ("[Lakin] has not shared any research with any member of the defendant team. He also refused to discuss more efficient ways of conducting legal research like the use of electronic search tools (e.g., Westlaw or Lexis).").

Lakin admitted at the hearing that he had accepted the legal research assignment with a deadline of May 23, but that he has still not finished the assignment. Lakin claims that several months are still required in order to complete it, suggesting that his work has something to do with preparing a brief for dismissal. Lakin further stated that he has not provided Walsh or the

team with any sort of interim report on his legal research, and that he is not planning on giving such a report to Walsh.  His tardiness in completing the research and his refusal to report on it to the defense team are beyond baffling.

Some of the statements Lakin made during the hearing were also perplexing.  For instance, he suggested that the tension between him and the defense team had to do with their failure to come to his office and speak with him personally, their use of email, and their insistence that the mitigation phase of the case is part and parcel of the preparation of the entire defense of the case.  Lakin's views seem detached from the reality of the circumstances of the case.  Personal contact is, of course, desirable, but the failure to come to his office (if in fact true) would hardly explain the breakdown here.  The use of email is the "new normal" of the legal world and beyond; resistance to it to the point of a breakdown in a relationship signals some deeper dysfunctionality on Lakin's part.  And his failure to appreciate the utility of an integrated approach to mitigation and the merits of the defense case reflects a perspective that is at odds with what it takes to mount a professional defense in a capital case.

Lakin did offer reasons for not attending some meetings (e.g., last minute out-of-town meeting with another client), and perhaps some of the friction can be traced to personality differences between him and Walsh.  But the weight of the declarations of three independent witnesses reciting multiple episodes of irresponsible behavior leads this Court to conclude that Walsh's complaints are substantially justified.  Notably, Lakin declined to cross examine the three declarants, who appeared at the hearing, when expressly offered that opportunity by the Court.[4]

---

[4] The declarations of three independent witnesses also refute Lakin's effort to undermine Walsh's credibility by reference to a criminal investigation by a Washington state assistant attorney general into Walsh's actions in an unrelated case some ten years ago, which ended

Beyond his interactions with other team members, or the lack thereof, the Court is further troubled by Lakin's failure to abide by this Court's order requiring him to submit the number of hours he had worked on this case and how much he had been paid for his services.  See 10/21/2016 Order at 1-2.  It has been nearly eight months since Lakin's submission was due, see id. at 2, and this Court has yet to receive his submission.

During oral argument, Lakin admitted that he has not complied with this Court's order, but claimed that he needs guidance on how to submit the documentation.  Lakin states that he asked Walsh for a copy of the form document that she had submitted, to no avail.  The Court finds this excuse without merit.

Lakin was ordered to submit his hours and amount paid so that the Court could "calculate the hours worked as if they had been worked at the rate provided by the Criminal Justice Act ('CJA'), 18 U.S.C. § 3006A."  Id. at 1; see also id. at 1-2 ("If the private funds [Lakin] has received to date exceed what he would have been paid at the CJA rate [of $183 per hour], he cannot being billing at public expense until the compensation that he has earned (measured as his total hours multiplied by the CJA rate) equals the private funds he has received.").  No formal document was required for the submission, just the amount received and the time spent.  Lakin's conduct demonstrates either an inexcusable disregard for this Court's order or an inexplicable lack of understanding of what the order required.  Either way, this would not bode well for Lakin playing a role in defending someone who may be on trial for his life.  His lack of responsibility and/or competence disqualifies him from handling a case fraught with — literally — life and death consequences.

---

without any charges being filed.  Even if Walsh's credibility were impeached thereby — and the Court makes no finding that it has been — Lakin cannot undermine the damning testimony of the three other individuals.

At the hearing, Lakin asserted that he and Walsh could still attempt to work together. Wilson did not seem persuaded. When asked by the Court if he wished to say anything, Wilson expressed his own bewilderment that the two lawyers were not getting along and his skepticism that they could.

This Court agrees that the relationship between the two lawyers has broken down, and irreparably so. And the Court further concludes that Lakin is the one who should leave the defense team, based on the very clear evidence that he is not functioning as the effective lawyer to which his client is constitutionally entitled.

Based on the foregoing, the Court finds that it is in the interests of justice to substitute Lakin with an attorney from the CJA panel.

## IV. CONCLUSION

For the reasons stated above, the Court grants learned counsel Walsh's ex parte motion for substitution of appointed counsel Lakin (Dkt. 214). Lakin is terminated as counsel, and new counsel shall be appointed immediately.

SO ORDERED.

Dated:  August 1, 2017                                          s/Mark A. Goldsmith
          Detroit, Michigan                                     MARK A. GOLDSMITH
                                                                United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 1, 2017.

s/Karri Sandusky
Case Manager

8