UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2  CARLO WILSON,

    Defendant.

Case No. 2:16-cr-20460

Hon. Mark A. Goldsmith

**REPLY TO GOVERNMENT'S RESPONSE [DKT. 783] TO MOTION FOR DISCOVERY IN ANTICIPATION OF FILING MOTION TO STRIKE NOTICE OF INTENT TO SEEK A SENTENCE OF DEATH DUE TO RACIALLY SELECTIVE LAW ENFORCEMENT [DKT. 770]**

Carlo Wilson submits this reply to the Government's response (Dkt. 783).

### ARGUMENT

**I.  The issues raised merit this Court's attention.**

The Government urges this Court to deny this motion on timeliness grounds. Mr. Wilson timely filed seven discovery motions by the October 19, 2018 discovery motions deadline, all which addressed customary discovery issues which counsel could foresee. Only in preparing to file motions to meet the February 8, 2019 deadline did counsel recognize a need to file a discovery motion before preparing to file a substantive motion addressing racially selective law enforcement. This issue is relatively novel and is not something that counsel

foresaw at the time of preparing to file the discovery motions due October 19. The issues raised merit this Court's attention.

## II. The *Davis/Sellers/Washington* standard applies.

The Sixth Circuit recognizes that the threshold for discovery on an issue is lower than that required to prove a claim. "Obviously, a defendant need not prove his case in order to justify discovery on an issue." *United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998). Recognizing this, the Government seeks to obliterate any distinction between selective law enforcement and selective prosecution claims, hoping to hold Mr. Wilson to the highest possible threshold to obtain discovery.

The crux of the Government's response is its mistaken belief, despite the defense's clear articulation otherwise, that the defense is attacking "the decision to seek a sentence of death." Dkt. 783 at 7. The defense was clear in its initial motion and is clear now: the FBI's Detroit field office engaged in a racially selective investigation of Mr. Wilson—part of a pattern of racially selective investigations of murders involving criminal groups of two or more persons—in violation of Mr. Wilson's Fifth Amendment rights. A selective law enforcement claim is well recognized. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race."); *United States v. Mumphrey*, 193 F. Supp. 3d 1040, 1055 (N.D. Cal.

2

2016) (concluding that dismissal is a proper remedy for a selective enforcement claim if proven).

Every circuit that has addressed a motion to dismiss for selective enforcement has addressed the merits of the claim—no circuit has held that selective enforcement cannot result in dismissal. *See*, *e.g.*, *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (*en banc*) ("If the [law enforcement] agencies do [discriminate], they have violated the Constitution—and the fact that the United States Attorney may have prosecuted every case the agencies presented, or chosen 25% of them in a race-blind lottery, would not matter, since the constitutional problem would have preceded the prosecutor's role and could not be eliminated by the fact that things didn't get worse at a later step."); *Gibson v. Superintendent*, 411 F.3d 427, 441 (3d Cir. 2005), *rev'd on other grounds* by *Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010) ("[I]f a person can demonstrate that he was subjected to selective enforcement in violation of his Equal Protection rights, his conviction will be invalid."); *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006); *see generally United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018); *United States v. Washington*, 869 F.3d 193 (3d Cir. 2017).

The Government appears to be confused. First, it conflates selective prosecution claims with selective law enforcement claims. *See* Dkt. 783 at 9–15. Then it conflates "outrageous government conduct" claims frequently brought in

stash house sting cases with selective law enforcement claims, *see* Dkt. 783 at 16, which are not at all tethered to government sting cases but apply to cases, such as this as well as stash house sting cases, where the allegation is that law enforcement engaged in racially selective investigations. The defense's argument is not premised on a "vague theory of outrageous government conduct," as the Government claims. Dkt. 783 at 16.

The Government similarly mistakenly believes that the selective law enforcement arguments in *Davis*, *Sellers*, and *Washington* were premised on an outrageous government conduct claim. Dkt. 783 at 16. This is wrong. The litigants in those cases presented racially selective law enforcement claims. Though *Sellers*, *Davis*, and *Washington* all involved stash house sting cases, the central holdings and premises of the cases hold regardless of the specific fact pattern. Those cases stand for the proposition that when a defendant sets forth a claim that law enforcement engaged in racially selective investigations, the threshold to obtain discovery is lower than for a selective prosecution claim. *Davis*, 793 F.3d at 720; *accord Sellers*, 906 F.3d at 853; *Washington*, 869 F.3d at 219.

The Government's citation to *United States v. Tucker*, 28 F.3d 1420 (6th Cir. 1994), is not at all relevant. The defendant in *Tucker* presented an outrageous government conduct claim, not a racially selective law enforcement claim, and the Court's analysis was limited to that claim. There is no Sixth Circuit authority on

4

the threshold for discovery for a selective law enforcement claim. The ample out-of-circuit authority cited by Mr. Wilson is persuasive.

> III. **The defense has set forth evidence to meet the *Davis*/*Sellers*/*Washington* standard as well as the *Armstrong* standard.**

The defense put forward three categories of evidence showing some evidence of discriminatory effect. The same evidence meets the *Armstrong* standard.

First, the Government does not dispute the race statistics proffered, that the FBI's Detroit field office referred for prosecution four pending cases, totaling 39 defendants, with 38 defendants being African-American and one defendant being Latino. The Government claims that the evidence of the four cases is "misleading and inaccurate" because only certain defendants faced death. Dkt. 783 at 12. The Government misses the point. The race of all the defendants is relevant to establish the composition of each criminal group. Further, what matters is what the FBI knew at the time it investigated and referred the cases for prosecution. In Mr. Wilson's case, it knew that four defendants faced a possible death sentence; that only two now face a death sentence is not relevant.

The Government offers an incomplete statement when it claims that it "has not sought a capital sentence for any of the defendants in *United States v. Griffin et al.*, case no. 2:17-CR-20639 or *United States v. Williams et al.*, case no. 2:18-CR-

5

20085." Dkt. 783 at 12–13. In fact, in *Griffin*, the Government has not yet decided whether to seek death for the three defendants facing death-eligible charges. *See Griffin et al.*, No. 2:17-CR-20639, ECF No. 99 (Order setting case schedule and noting that three defendants face possible death sentence). In *Williams*, all four defendants were indicted on death-eligible charges. *United States v. Williams et al.*, case no. 2:18-CR-20085, ECF No. 1 at 2 (noting all four defendants charged with violating 18 U.S.C. § 924(j), a death-eligible charge). In *United States v. Arnold et al.*, case no. 2:15-CR-20652, four defendants faced death-eligible charges. In total, the FBI's Detroit field office referred fourteen African-American defendants and one Latino defendant for death-eligible charges. What makes this particularly troublesome is that Michigan does not have the death penalty. So when the FBI's Detroit field office only investigates and refers for federal prosecution homicide cases involving criminal groups composed of minorities, only minority defendants face the death penalty. Criminal groups with white murder defendants prosecuted for murder in state court receive at most a life sentence.

  The defense next presented Michigan murder statistics over the past ten years. Mr. Wilson is not claiming, as the Government suggests, "that a domestic homicide occurring in Western Michigan in which the suspect is Caucasian is evidence of federal law enforcement discrimination in Detroit." Dkt. 783 at 13. Rather, he claims exactly what he wrote: "from 2008 . . . to 2017, there were 648

adult white suspects arrested for murder in Michigan [and] [i]t is difficult to believe that none of those murders involved criminal groups that could be investigated by the FBI and referred for prosecution in federal court." Dkt. 770 at 13. This is simply evidence that "adds weight to the conclusion that there exists 'some evidence' that the FBI's Detroit field office" engaged in racially selective investigations. *Id*. at 11. The final piece of evidence Mr. Wilson put forward establishes the weight of this evidence.

Mr. Wilson lastly put forward evidence of a similarly situated criminal group that committed a triple homicide in 2015, and yet that case was not investigated by the FBI's Detroit field office and referred for federal prosecution. The Government describes the newspaper article cited as a "third hand reference" that is "legally indistinguishable" from the "clipping from an unknown newspaper" the defendant submitted in *Hubbard v. United States*, No. 04-80321, 2006 WL 1374047 (E.D. Mich. May 17, 2006).[1] But Mr. Wilson cited the newspaper, the Detroit Free Press, and included a web link. Dkt. 770 at 13–14. Also attached here are Booking Sheets from the case which establish the charges and the race of the defendants. Exhibit B.[2] In discussing this case, the Government misunderstands the

---

[1] The Government's brief uses an incorrect citation.
[2] The original Booking Sheet for defendant Kenneth Brunke also included murder charges. Brunke avoided prosecution on the murder charges. The article noted that the case was investigated locally and prosecuted by a "one-man office" with a prosecutor "who had never tried a murder case." L.L. Brasier and Kathleen

7

term "similarly situated." That the defendants in the case cited are "in the Upper Peninsula, as far from Detroit as is geographically possible while still being in the state of Michigan," *see* Dkt. 783 at 15, is immaterial. *See* Exhibit C (printout from FBI web page which notes that FBI Detroit "[c]overs the entire state of Michigan, including the Upper Peninsula"). A similarly situated defendant is a defendant in a murder case involving two or more conspirators that implicates federal jurisdiction in Michigan. The case cited is just such a group.

The evidence put forward more than meets both the *Davis/ Sellers/ Washington* standard as well as the *Armstrong* standard. Mr. Wilson has put forward "'some evidence' of discriminatory effect." *Washington*, 869 F.3d at 220–21. Should the Court determine that the *Armstrong* standard applies, he is further required to show "that similarly situated persons were treated differently." *United States v. Bass*, 536 U.S. 862, 864 (2002). Mr. Wilson has done that here. Under *Armstrong*, he must also show "some evidence" of discriminatory intent. *Id*. at 863. The Supreme Court and at least one circuit court hold that extreme evidence of discriminatory effect alone can support a finding of discriminatory intent: "The impact of the official action—whether it bears more heavily on one race than another—may provide an important starting point" to "[d]etermining whether

---

Galligan, *Brutal murders, uncertain justice shake quiet U.P. town*, Detroit Free Press, Dec. 5, 2015, https://www.freep.com/story/news/local/michigan/2015/12/05/triple-homicide-upper-peninsula/75468204/ (last visited Mar. 18, 2019).

8

invidious discriminatory purpose was a motivating factor." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977) (internal quotation marks and citation omitted); *United States v. Bd. of Sch. Comm'rs of Indianapolis*, 573 F.2d 400, 411 (7th Cir. 1978) ("The first and often the most probative indicia of discriminatory purpose is the disproportionate impact or effect a[n] . . . official act may have. In some circumstances impact alone may be sufficient."). Here, should the Court rule that *Armstrong* applies, Mr. Wilson need only show "some evidence" of discriminatory intent. He has met that standard in light of the stark evidence presented of racially discriminatory effect.

## CONCLUSION

Based on the arguments presented, Mr. Wilson requests that the Court grant this motion. Alternatively, Mr. Wilson asks that this Court hold an evidentiary hearing to determine the scope of discovery to be produced.

Respectfully submitted,

| | |
|---|---|
| s/ Jacqueline K. Walsh | s/ Ashwin Cattamanchi |
| Jacqueline K. Walsh | Ashwin Cattamanchi |
| Washington State Bar No. 21651 | Illinois State Bar No. 6289199 |
| 705 2nd Ave., Suite 501 | Federal Defenders of San Diego, Inc. |
| Seattle, WA 98104 | 225 Broadway, Suite 900 |
| (206) 325-7900x5 | San Diego, CA 92101 |
| Jackie@jamlegal.com | (619) 234-8467 |
| Counsel for Carlo Wilson | ashwin_cattamanchi@fd.org |
| | Counsel for Carlo Wilson |

DATED: March 19, 2019

## CERTIFICATE OF SERVICE

I, Ashwin Cattamanchi, hereby certify that on March 19, 2019, I electronically served the forgoing document with the Clerk of the Court using the ECF system which will send notification to all parties.

s/ Ashwin Cattamanchi