**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA, )
)
Plaintiff, )
) CRIMINAL NO. 2:16-CR-20460
vs. )
) HON. MARK A. GOLDSMITH
)
D-2 CARLO WILSON, )
)
Defendant. )

**GOVERNMENT'S MEMORANDUM ADDRESSING POTENTIAL GOVERNMENT EXPERT ASSISTANCE AND TESTING CONCERNING *ATKINS v. VIRGINIA* ISSUES**

COMES NOW the United States of America, by and through its attorneys, Matthew Schneider, United States Attorney and Louis A. Crisostomo, Robert Moran Assistant United States Attorneys, and James Peterson, Department of Justice trial attorney and pursuant to the Court's order dated December 12, 2018 (ECF No. 652) and hereby files its Memorandum: (i) identifying the neuropsychological experts upon whom it intends to rely in opposition to any *Atkins* motion; (ii) attaching the experts' curriculum vitae; and (iii) giving notice of the type and scope of proposed neuropsychological testing of Defendant.

The government has retained Dr. Robert Denney, Psy.D as its neuropsychological expert. A copy of his CV is attached. The government gives

notice of the following testing to be performed by Dr. Denney to address the *Atkins* issues raised and addressed by defendant WILSON in his *Atkins* Notice (ECF No. 814) and his letter dated March 15, 2019:

1. Continuous Perception Test-3
2. Wechsler Adult Intelligence Scale-IV
3. Reynolds Intellectual Assessment Scales-2
4. Neuropsychological Assessment Battery:
    a. Attention Module
    b. Language Module
    c. Memory Module
    d. Spatial Module
    e. Executive Function Module
5. Trail Making Test, Parts A & B
6. Finger Tapping Test
7. Grooved Pegboard Test
8. Controlled Oral Word Association Test–FAS & Animals
9. Wisconsin Card Sorting Test
10. Woodcock-Johnson Tests of Achievement-IV:
    a. 1-Letter-Word Identification
    b. 2-Applied Problems
    c. 4-Passage Comprehension
    d. 5. Calculation
    e. 7-Word Attack
    f. 8-Oral Reading
    g. 9-Sentence Reading Fluency
    h. 10-Math Facts Fluency
11. Minnesota Multiphasic Personality Inventory-2
12. Adaptive Behavior Assessment System-3 Self-Report
13. Connors' Adult ADHD Rating Scale
14. Performance Validity Testing

The government also confirms that defense counsel will not disclose to defendant WILSON the type and scope of testing disclosed in this pleading.

Respectfully submitted,
MATTHEW SCHNEIDER
United States Attorney

By *s/James Peterson*
James Peterson
Bar ID: VA 35373
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W.
6th Floor
Washington, DC 20530
James.D.Peterson@usdoj.gov
Phone: (202) 353-0796
Fax (202) 353-9779

LOUIS CRISOSTOMO
ROBERT MORAN
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br><br>D-2 CARLO WILSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>CRIMINAL NO. 2:16-CR-20460<br><br>HON. MARK A. GOLDSMITH |

**GOVERNMENT'S BRIEF IN SUPPORT OF POTENTIAL GOVERNMENT EXPERT ASSISTANCE AND TESTING CONCERNING *ATKINS v. VIRGINIA* ISSUES**

COMES NOW the United States of America, by and through its attorneys, Matthew Schneider, United States Attorney and Louis A. Crisostomo, Robert Moran Assistant United States Attorneys, and James Peterson, Department of Justice trial attorney and pursuant to the Court's order dated December 12, 2018 (ECF No. 652) hereby files its Brief in Support of its memorandum (i) identifying the neuropsychological experts upon whom it intends to rely in opposition to any Atkins motion; (ii) attaching the experts' curriculum vitae; and (iii) giving notice of the type and scope of proposed neuropsychological testing of Defendant.

## I. BACKGROUND

On June 22, 2016, a federal grand jury returned the Indictment in this matter, charging two defendants, EDWIN MILLS and CARLO WILSON, with multiple counts of Murder in Aid of Racketeering, Assault with a Dangerous Weapon in Aid of Racketeering, and related firearms charges. ECF No. 1. The homicide related charges are death penalty eligible offenses. On February 28, 2018, a federal grand jury returned the Second Superseding Indictment. ECF No. 292. On March 1, 2018, the government filed its Notice of Intent to Seek the Death Penalty against E. MILLS and WILSON. ECF No. 293.

On March 15, 2019, defendant WILSON gave notice that he claims to be intellectual disabled or mentally retarded pursuant to the Supreme Court's decisions in *Atkins v. Virginia,* 536 U.S. 304 (2002)*; Hall v. Florida,* 134 S.Ct. 1986 (2014); *Brumfield v. Cain,* 135 S.Ct. 2269 (2015); and *Moore v. Texas,* 137 S. Ct. 1039 (2017). ECF No. 814.

## II. DISCLOSURE PURSUANT TO COURT ORDER

The government has retained Dr. Robert Denney, Psy.D as its neuropsychological expert. A copy of his CV is attached as Exhibit A. The government gives notice of the following testing to be performed by Dr. Denney to

address the *Atkins* issues raised and addressed by defendant WILSON in his *Atkins* Notice (ECF No. 814) and his letter dated March 15, 2019:

1. Continuous Perception Test-3
2. Wechsler Adult Intelligence Scale-IV
3. Reynolds Intellectual Assessment Scales-2
4. Neuropsychological Assessment Battery:
   a. Attention Module
   b. Language Module
   c. Memory Module
   d. Spatial Module
   e. Executive Function Module
5. Trail Making Test, Parts A & B
6. Finger Tapping Test
7. Grooved Pegboard Test
8. Controlled Oral Word Association Test–FAS & Animals
9. Wisconsin Card Sorting Test
10. Woodcock-Johnson Tests of Achievement-IV:
    a. 1-Letter-Word Identification
    b. 2-Applied Problems
    c. 4-Passage Comprehension
    d. 5. Calculation
    e. 7-Word Attack
    f. 8-Oral Reading
    g. 9-Sentence Reading Fluency
    h. 10-Math Facts Fluency
11. Minnesota Multiphasic Personality Inventory-2
12. Adaptive Behavior Assessment System-3 Self-Report
13. Connors' Adult ADHD Rating Scale
14. Performance Validity Testing

The government notes that defendant WILSON provided the government with notice of the tests that were administered to him on 10/12/2018 and 10/13/2018, but not the results themselves or the raw data supporting any results. Consequently, once those results are revealed, it may be necessary for the

government to hire additional experts to address neuropsychological collateral issues raised by the specific test results subsequently disclosed. For example, upon review of the specific test results disclosed, it may be necessary to explore the interplay between a learning disability and low test scores necessitating hiring a psychological expert such as Robert Mapou, Ph.D or another professional expert in such collateral issues. The government reserves the right to supplement this notice based upon information subsequently disclosed by the defense.

## III. LAW AND DISCUSSION

A number of other issues are inextricably entwined with defendant WILSON's Atkins Notice as well as the government's notice of neuropsychological testing and neuropsychological experts. First, to help maintain the integrity of the testing process, the government requests that the defendant have no advance notice of the tests to be administered by the government. Second, the government requests that the defendant be required to disclose the results of the tests conducted as well as the raw data in addition to simply naming the tests administered. Third, the government anticipates that WILSON will have been administered other testing not disclosed at this time, as well as family members and friends, to try to establish the remaining requirements of an intellectual disability diagnosis, namely: deficits in adaptive functioning that result in failure to meet developmental and sociocultural standards for personal independence and

social responsibility and onset of intellectual and adaptive deficits during the developmental period. *See*, DSM-5, pg. 33.

### A. The Defendant Should Not Have Advance Notice of the Testing Protocol

The defendant has agreed not to disclose the proposed testing battery to the defendant. The defendant has given notice that he will rely on some combination of the Weschler Adult Intelligence Scale – 4th Edition as well as and other tests to try to establish the "Deficits in intellectual functions" prong of Intellectual Disability Disorder criteria outlined in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). In rebuttal, the United States' expert will be conducting a thorough examination to either confirm or refute this prong of the diagnosis. The quality of his analysis, naturally, depends on the accuracy of the test results. The accuracy of the test results rely, in turn, on the defendant not having advance notice of what tests will be given and when.

Having advance notice of what tests will be given, and what types of inquiry are contained within those tests, creates the opportunity for a subject to alter his responses in an effort to meet the diagnosis he is asserting.[1] In other words, it's

---

[1] Brennan, A. M., Meyer, S., David, E., Pella, R., Hill, B. D., & Gouvier, W. D. (2009). The vulnerability to coaching across measures of effort. The Clinical Neuropsychologist, 23, 314-328; Victor, T. L. & Abeles, N. (2004). Coaching clients to take psychological and neuropsychological tests: A clash of ethical

possible to "cheat" if you know what the questions will be or the tests to be administered. The United States does not know at this moment whether or not the defendant's symptoms are genuine or feigned, and its expert will not be able to accurately diagnose him unless they are able to conduct a valid examination.

Upon consultation with counsel for WILSON, they have agreed not to disclose to him the Government's proposed neuropsychological battery once they learn of it.

### B. The Defense *Atkins* Notice Fails to Include Test Results or Raw Data – WILSON Should Provide a Complete Notice with Results

The government notes that the defense notice sent via letter on March 15, 2019 fails to identify any test results or to include any raw data. The government cannot completely identify all potential necessary neuropsychological testing (or neuropsychological experts) in the absence of the test results and raw data so that it can determine the significance of the results of the tests. Rather, the defense simply stated that the "defense is providing you with notice that Dr. Scott Hunter, a

---

obligations. Professional Psychology: Research and Practice, 35(4), 373-379; Gutheil, T. G. (2003). Reflections on coaching by attorneys. Journal of the American Academy of Psychiatry and the Law, 31, 6-9; Lees-Haley, P. R. (1997). Attorneys influence expert evidence in forensic psychological and neuropsychological cases. Assessment, 4(4), 321-324; Wetter, M. W., & Corrigan, S. K. (1995). Providing information to clients about psychological tests: A survey of attorneys' and law students' attitudes. Professional Psychology: Research and Practice, 26(5), 474-477; Youngjohn, J. R. (1995). Confirmed attorney coaching prior to neuropsychological evaluation. Assessment, 2(3), 279-283.

neuropsychologist, along with Ms. Lindsay Katz, MA, administered the below noted neuropsychological battery to Mr. Wilson:"

> Weschler Adult Intelligence Scale – 4th Edition
> Woodcock Johnson Tests of Achievement – 4th Edition
> Boston Naming Test
> California Verbal Learning Test – 3rd Edition
> RBANS
> Weschler Memory Scale – 4th Edition
> Test of Memory and Malingering (TOMM)
> Rey 15
> Sensory Perceptual Exam
> Delis-Kaplan Executive Function System
> Rey Complex Figure Test
> Grooved Pegboard

Letter dated March 15, 2019 from Jackie Walsh to Mr. Louis Crisostomo, et al.

The government further notes that by filing the Notice that he is claiming an intellectual disability on March 15, 2019, WILSON has put his mental health "in issue" and waived any privilege he may have had as it relates to the *Atkins* claim. *See Simon v. Cook*, 261 Fed. Appx. 873, 886 (6th Cir. 2008), *Fuller v. Kerr*, Case No. 2:13-CV-13171, 2015 WL 1565367 (E.D. MI Apr. 8, 2015) ("Having made these claims and put these aspects of his mental and physical health at issue, Fuller has effectively waived whatever privilege he had to his medical and psychological records"). In *Kansas v. Cheever*, 571 U.S. 87, 93 (2013), the Supreme Court held that the government could present the mental health findings of a court ordered evaluation, over the defendant's Fifth Amendment objection, when the defense presents mental health evidence. Any other ruling, the Court held, would

"undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Id.*, at 94. *See also Buchanan v. Kentucky*, 483 U.S. 402, 423-424 (1987). The government recognizes that WILSON's disclosure obligation for expert reports does not come due until May 28, 2019, and the government does not seek the reports early, but rather, simply, the scores and raw data. Accordingly, the government requests that WILSON be compelled to provide the government a complete and specific notice that includes the test results and raw data so that its expert can fully and accurately evaluate any potential rebuttal neuropsychological testing to perform and experts to conduct that testing.

**C. Adaptive Behavior Deficits - Analysis**

The government understands from the express language of the Court's Modified Scheduling Order (ECF No. 652) that the March 15, 2019 deadline encompassed only neuropsychological testing relating to evaluating, mostly, deficits in intellectual functioning under the first prong found in the DSM-5. Now that defendant WILSON has given notice that he is raising an *Atkins* claim, the government must proceed to evaluate and address the *Atkins* claim, and all aspects of such a claim. Therefore, the government also anticipates moving forward on its adaptive behavior assessment investigation for defendant WILSON in accordance

with its memorandum filed on January 2, 2019. *See* ECF No. 681. That investigation would not involve any additional testing of defendant WILSON other than outlined here. In accordance with the express terms of the Court's Modified Scheduling Order (ECF No. 652), this notice does not include any experts, or anticipated testing, concerning adaptive behavior deficits or onset of intellectual and adaptive deficits during the developmental period.

Conclusion

The government files this as its Memorandum and Notice in compliance with the Court's Order dated December 12, 2018 (ECF No. 652) requiring the government to identify neuropsychological experts upon whom it intends to rely in opposition to any *Atkins* motion, attaching the experts' curriculum vitae, and giving notice of the type and scope of proposed neuropsychological testing of Defendants.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

By *s/James Peterson*
James Peterson
Bar ID: VA 35373
Trial Attorney
Capital Case Section
Criminal Division

United States Department of Justice
1331 F Street, N.W.
6th Floor
Washington, DC 20530
James.D.Peterson@usdoj.gov
Phone: (202) 353-0796
Fax (202) 353-9779

LOUIS CRISOSTOMO
ROBERT MORAN
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of March 2019, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF systems and was served upon each attorney of record via ECF notification.

*/s/ James D. Peterson*
James D. Peterson
Trial Attorney